56 CCPA

**Application of Vernon K. CHARVAT.**
**Patent Appeal No. 8140.**

*United States Court of Customs and Patent Appeals.*

*June 19, 1969.*

---

William E. Thomson, Jr., Oberlin, Maky, Donnelly & Renner, Cleveland, Ohio, attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 2, 3, 5, 11, 12, 14, 16, 21, 40, and 41 [1] as obvious in view of certain prior art.

The invention relates to an "abrasive article," particularly a "rotary finishing wheel," and a method of making same. According to the specification, the article provides a finishing effect in a new range which appears to be the result of both a grinding wheel and a buffing wheel. The article comprises an open skeleton or batt of randomly disposed non-woven fibers adhesively connected at the fiber intersections by a first adhesive (rubber latex, for example) and embedded at least in part in a matrix of a second solid, or foamed, adhesive which optionally contains discrete abrasive particles. The foamed adhesive may be polyurethane, as recited in several claims. The abrasive particles, if present, may be placed throughout the wheel or alternatively on its periphery. The article and process are reflected in representative claims 40 and 41:

40. An abrasive article comprising a preformed, self-supporting skeletal structure of randomly disposed non-woven filamentous material, said filamentous material being closely adhesively interconnected and joined into said skeletal structure by a first adhesive, discrete abrasive material incorporated in said article, a matrix of adhesive resin binder, and a multitude of small cells in said binder in the interstices between said abrasive and filamentous materials slightly spacing said abrasive material apart, said article slightly flexible to afford a slowly yielding resistance when said article is applied against a work-piece.

41. The method of making a rotary wheel finishing tool comprising the steps of blanking out a circular form of a preformed adhesively interconnected skeletal structure of fibrous material, intruding within said blank a sufficient amount of adhesive plastic binder substantially to maintain such circularized blank in unitary condition when the peripheral working face thereof is subjected to working pressure, and subsequently forming said plastic binder.

The references are:

| Loeffler | 2,327,199 | Aug. 17, 1943 |
| Hurst | 2,768,483 | Oct. 30, 1956 |
| Nestor | 2,862,806 | Dec. 2, 1958 |
| Upton, Jr. | 2,885,276 | May 5, 1959 |

---

1. Appearing in application serial No. 834,501, filed August 18, 1959, for "Abrading and Finishing Tool."

Loeffler discloses an abrasive or polishing wad comprising a mass of entangled fibers "open enough in texture to admit of reception, to a desired degree of penetration, of an abrasive binder mix." Insofar as Loeffler is concerned, the desired penetration is "at least and preferably the outlying portions" of the fibrous mass. The article is subsequently molded "to a desired symmetrical form" and the adhesive set.

Hurst discloses an abrasive article consisting of a plurality of carded fibrous membranes, each of which is formed from individual fibers deposited from carding assemblies onto a moving support while being subjected to air agitation.[2] The membranes which are to serve as the backing structure for the abrasive article are impregnated with an adhesive, while the membranes serving as the abrading element are impregnated with a resin-abrasive mixture such that "the abrasive particles project or protrude above the surface of the integrated structure so as to present an unencumbered, fast cutting surface, although the grains extending above the surface extend down into the fibrous structure sufficiently to be held firmly therein by the surrounding fibers and adhesive binder." The backing and abrading elements are then combined under conditions in which a non-lamellar, integrated, fibrous structure is formed. According to Hurst, more than one resinous adhesive may be employed, exemplary of which are various thermosetting and thermoplastic adhesives including those of "natural and synthetic rubber base." The final article, says Hurst, can range:

* * * from articles of substantially rigid character to articles which are highly flexible, depending upon the thickness of the fibrous structure composing the article and/or the type and amount of adhesive binder employed. However, irrespective of the overall flexibility or rigidity of the article, the individual abrasive particles are provided with a cushioned support or background which permits the abrasive particles to yield or give under the pressures of grinding, thereby providing a resiliency of cutting action highly beneficial and conducive to a smoothness of operation, freedom from vibration, and enhanced cutting action.

Nestor discloses a method of forming a grinding wheel by pouring abrasive particles and resin into a centrifugal mold, rotating the mold whereby centrifugal forces distribute the abrasive particles at the outer periphery of the grinding wheel and the liquid resin fills the interstices between the abrasive grains, and subsequently setting the resin. According to Nestor, reinforcing fibers may form part of his abrasive article.

Upton discusses many of the problems with prior art abrasive articles which are also discussed by appellants here, namely "chatter marks" on the workpiece and overheating which produces stains and undesirable odors. To solve those problems, Upton discloses an abrasive wheel of an elastic, foamed polyurethane rein-

---

2. Hurst describes the manner of forming the membranes:

* * * During the deposition of the individual fibrous membranes, the individual fibers of each membrane thereof are interwoven and interlocked with one another and with the fibers of the adjoining membranes by subjecting the membranes to a gentle air or gaseous agitation during their deposition so that throughout the fibrous body interstices are formed by the interlocking fibers. The size of the interstices and openness of the fibrous structure are controlled by the extent of interweaving and interlocking of the fibers, the more open structures being highly adapted for reception of abrasive particles which are lodged in the interstices and retained therein by the surrounding fibers which, upon further compacting, close about the abrasive grains to provide a strong body. This process of forming an interlocking fibrous body of substantially non-lamellar structure is termed "aerodynamic weaving" and is used to promote the strength and eliminate laminations from the web and, in the case of the abrasive-filled material, provide a structure capable of receiving and retaining abrasive grains of the desired size. * * *

forced with fibers, the latter serving to strengthen the wheel against stresses of high speed operation. According to Upton, the resultant wheel is further advantageous:

> One of the unique results of the invention described is the finish that is imparted to the workpiece as abraded by such abrasive products. The finish received is (grit size for grit size) very much finer than that obtained by use of either the conventional grinding wheel or surface coated abrasive. A characteristic phenomenon is a removal of stock (albeit at a slower rate), which leaves a polished finish rather than a scratch finish. This phenomenon I have observed is due to the even dispersion of the grain throughout the structure, *with each particle individually coated and cushioned in a free film of elastic bond, as a result of the chemically controlled foaming, settling and polymerizing process.* The result is a composition that is elastic as a whole and in the individual bonding films and is exceedingly tough, wherein the resin foam cushions the grain action in all three dimensions and acts to control the penetration of the grain or polishing particle into the service of the work.
>
> \*     \*     \*     \*     \*     \*
>
> Owing to the three-dimensional spacing of each discrete abrasive particle, *spaced from adjacent particles* and held, per se, occluded in a continuous, thin film of elastic bonding medium, the abrasive products of this invention have a soft feel to the touch, regardless of the high proportions of abrasive grains which they may contain. \*  \*  \*  [Emphasis supplied.]

The board affirmed the examiner's rejection of all claims as unpatentable over Nestor in view of Hurst and Upton, stating:

> \*  \*  \* since Hurst discloses an abrasive wheel formed of randomly disposed filamentous material filled with abrasive material and the filamentous material being held together by a resin and Upton discloses a formed [foamed?] polyurethane abrasive wheel, it would be obvious to one skilled in the art to form an abrasive wheel of the type set forth in the claims. It is noted that Nestor discloses an abrasive wheel formed with an outer abrasive containing \* \* \* grinding ring and an inner zone of abrasive free resin. It is also noted that reinforcing fibers may be included in the abrasive wheel.

Neither the examiner nor the board found appellant's use of two adhesives, as recited in the claims, to distinguish significantly over the references.

Appellant's principal contention here is that no reference discloses the use of a preformed skeleton structure of fibers bonded at the fiber intersection with a *first* adhesive. The use of two adhesives, appellant alleges, is significant:

> Contrary to the Board's statement, the use of two adhesives as defined in the claims on appeal is significant. The first adhesive, which interconnects the fibers into the skeletal structure, maintains the integrity of the skeletal structure and the relationship of the individual fibers while the article is going through the remaining steps of the manufacturing process. This adhesive must also ultimately provide a body strength which is sufficient to withstand the combined forces of rotation and brushing while allowing some deformation during use. The matrix resin on the other hand must be sufficiently hard and have sufficient strength to allow the abrasive grains to be placed in forcible contact with the working surface with sufficient pressure to perform the desired abrading of metal or other material from such surface.
>
> In combination, the two adhesives complement one another since the first or elastomeric adhesive maintains the overall gross dimensional form which provides stability on a macro basis but permits temporary micro deformation with elastomeric recovery. Due to the use of the first adhesive, the matrix

resin which holds the abrasive may fragment or otherwise modify its exterior configuration on a permanent but small scale in order to create stable operating conditions for each use in which the abrasive grains remain intact and attached. The elastomeric adhesive also enables the tool to avoid stress concentration and brittleness due to its yielding ability and thus avoids apparent fiber embrittlement and creates the equivalent of a stronger body, viz., one which is more resistant to shredding and tearing, without compromise in the secure attachment of the abrasive grains.

Appellant's arguments, if not contradicted, are at least not supported by his specification, where it appears that the use of the first adhesive is simply a matter of convenience "to maintain it [the batt of fibrous material] in batt form" or, as appellant puts it another way, "the initial bonding agent in the fibrous or Tulatex material * * * [is used] merely to retain the loose fibers in the desired position." The specification attributes no other function to the first adhesive. In fact, it appears from the specification, as summarized in appellant's brief before the board, that the first adhesive contributes little, if anything, to the ultimate body strength of the abrading or finishing tool:

Batts of Tampico fibers which are commonly called Tulatex are used generally in the manufacture of furniture as a stuffing material. For such use, the batt is treated with a suitable bonding material which *weakly* adheres the fibers together to maintain them in batt form. When such batts are subjected to pressure or abrasion, however, as would be encountered in use as a brushing tool, *the fibers tend to shred and fly apart.* It has now been surprisingly discovered that such material may be useful as an abrading or finishing tool if a further bonding agent is applied thereto to maintain the fibrous or filamentous elements in a strongly unitary condition. [Emphasis supplied.]

Indeed, the specification attributes to the polyurethane foam matrix adhesive many of the functions appellant ascribes here to the first adhesive, namely body strength, deformability or yieldability.[3] Inasmuch as Hurst contemplates the use of two adhesive resins to hold his fibrous membranes in a unitary structure, we think it would be obvious to one of ordinary skill in this art, were he to find that the preformed, non-woven membranes of Hurst are not sufficiently stable during the manufacturing process, to rectify that situation by adhesively interconnecting the fiber intersections with a first adhesive, such as the rubber base adhesive disclosed by Hurst, and employing as the second adhesive a matrix of polyurethane foam for the specific advantages, such as the resilient spacing of the adhesive particles apart, which

---

3. The specification states:
  * * * Not only does the additional binding agent provide a matrix for the tool firmly holding it in such circular shape, but it also adds body and support for the working face. The working face will, with this relatively small amount of further bonding agent, act substantially as a rotary brush with the exception that the fibers are positioned randomly in their direction of lie. Such further binding agent may, if desired, be foamed to produce a unitary body resiliently but firmly cross-locking the fibers together and in this manner providing a body for the working face that will yield and flex to control the pressure on the work.

* * * * *
  * * * The polyurethane, of course, is reacted with a foaming agent or catalyst so that the fibrous body 6 will be resiliently deformed in supporting the workface * * *.
* * * * *
  * * * The use of polyurethane foam gives the tool a dimensional stability and yet permits such abrasive grains and fibrous material to be individually independently movable when in contact with the work. * * *
Those advantages of polyurethane foam in an abrasive article are known to the prior art, as shown by Upton.

are taught by Upton. We agree with the board that the claimed use of two adhesives does not appear unobvious in view of the references.

Appellant further argues that no reference discloses a finishing wheel which contains relatively little matrix adhesive and is 90 percent open by volume, as recited in claim 14. Such an article, according to the specification, is relatively flexible and possesses "open cavities which may receive abrasive materials." Hurst, however, similarly discloses that his "more open structures" are "highly adapted for reception of abrasive particles which are lodged in the interstices and retained therein by the surrounding fibers," and that flexibility depends, inter alia, on the type and amount of adhesive binder employed.

Our review of the record with due regard for appellant's arguments satisfies us that the board did not err in sustaining the rejection. The view we take makes it unnecessary to consider a second rejection of claims 2, 14 and 40 as obvious in view of either Loeffler or Hurst.

The decision is affirmed.

Affirmed.